JAMES D. TURNBULL v. THE PRENTISS LUMBER COMPANY IMPLEADED WITH WORTHY L. CHURCHILL, GEORGE PRENTISS, JAMES REID AND HENRY D. BILLINGS.

| | |
|---|---|
| 55 | 387 |
| 65 | 127 |
| 55 | 387 |
| 90 | 349 |
| 55 | 387 |
| 93 | 467 |
| 55 | 387 |
| 110 | 264 |
| 55 | 387 |
| 111 | 333 |
| 55 | 387 |
| 118 | 490 |
| -55 | 387 |
| s21NW | 375 |
| 130 | 1114 |
| 55 | 387 |
| 144 | 7 99 |
| 144 | 7100 |

*Creditor's bill against a corporation—Insolvency—Receivership.*

1. A judgment creditor's bill will lie against a corporation.

2. The statute giving the court of chancery jurisdiction to restrain the transfer of any property found to belong to a judgment debtor an execution against whom has been returned unsatisfied (How. Stat. § 8150), is in pari materia with § 8153, which gives the circuit court supervisory powers over the officers of a corporation, and provides that at the instance of a creditor, it may be exercised on bill or petition and the property of the corporation be put in a receiver's hands, if an execution against it is returned unsatisfied.

3. The stock of an insolvent corporation is a trust fund for the payment of its creditors; and as among such creditors the maxim holds that equality is equity.

4. The claim of a creditor of an insolvent corporation to a share in its assets may be established even though a judgment creditor's bill against it is not filed in behalf of all creditors or even of such as come in and share the expense.

5. The averment in a judgment creditor's bill against a corporation, that it has ceased to do business is not, *it seems,* denied by an answer which admits that the only business done is such as is incident to closing up its affairs, and that it has no available capital.

6. The officers of an insolvent corporation cannot go on converting its assets into money and paying preferred creditors after a judgment creditor's bill has been filed against it.

7. A receiver may properly be appointed on an undisputed averment of insolvency and a showing of danger of the misappropriation or waste of assets; and such appointment may be made even when the case stands on demurrer and before final decree.

Appeal from Alpena.    (Emerick, J.)    Oct. 24.—Nov. 19.

CREDITOR's bill.    Defendants Churchill, Prentiss, Reid and Billings appeal.    Affirmed.

*Turnbull & Dafoe* for complainant.

*Clayberg & Sleator* for defendants appellant, cited as to the appealability of the order appointing a receiver: *Lewis v. Campau* 14 Mich. 458; *Barry v. Briggs* 22 Mich. 201; *McCombs v. Merryhew* 40 Mich. 721; *Taylor v. Sweet* 40 Mich. 739; *Tawas &c. R. R. v. Iosco Circuit Judge* 44 Mich. 482; *Arnold v. Bright* 41 Mich. 207; *Simon v. Schloss* 48 Mich. 233; *Chittenden v. Whitbeck* 50 Mich. 420; in Michigan a receiver cannot be appointed for a corporation except under How. Stat. ch. 281, in proceedings to wind up its affairs: *Port Huron &c. R. R. v. St. Clair Circ. Judge* 31 Mich. 456, and in such proceeding he cannot be appointed pending demurrers: *Cook v. D. & M. Ry.* 45 Mich. 453.

CHAMPLIN, J.   On the 21st of February, 1884, complainant filed a bill of complaint against defendants, alleging therein that he is a creditor of the Prentiss Lumber Company, a corporation organized under Act 187 of the Session Laws of 1875, by filing articles of association on the 20th of March, 1882; that defendants Prentiss, Reid and Billings were its stockholders and first directors; that soon after their formation the corporation became the owner of certain real estate and also a large amount of other property connected with its business; that it carried on its business up to or about September 7, 1883; that on or about January 30, 1883, it filed its annual statement showing total assets of $210,127.91, and total liabilities of $86,261.10; that about the middle of June, 1883, the company, through its president, said George Prentiss, represented to complainant that it was the owner of a large amount of real and personal property and worth over and above its liabilities $150,000, and that all the property he, Prentiss, formerly owned, and was in any way connected with said business belonged to the corporation, which was then doing a successful business; that relying upon these representations complainant then sold to the corporation lumber of over the value of $4200 on three months' credit; that within sixty days Prentiss informed him that the directors of the corporation had mortgaged the entire property of the corporation to certain of its creditors, leaving a large number

of its creditors, including complainant, unsecured, but assured him that there was abundant property belonging to the corporation to pay all its debts; that the directors have the books and records of the corporation in their possession and refuse complainant access to the same; that the corporation is insolvent, and has been for a long time; that it has no one honestly looking after its affairs; that Prentiss and Reid are engaged, and have been for several months past, in disposing of the corporate property in their own interest; charges on information and belief that they have taken within six months large quantities of lumber belonging to the corporation, and shipped the same to Ohio, where they have started a lumber-yard; that they have invested money belonging to the corporation in pine lands, taking the title in their own or others' names, and also charging them with selling and converting other specified property to their own use, of the value of $10,000 or upwards; that the real estate has been mortgaged for over $130,000; that none of the mortgages can be foreclosed in time to interfere with the use of the mill for the sawing season of 1884, and offering to pay $6000 for the use of the premises for the sawing season of 1884; that February 18, 1884, Reid and Prentiss, assuming to act for the corporation, by quitclaim deed conveyed the mill premises to defendant Churchill; that this conveyance is a fraud upon complainant and the other unsecured creditors of the corporation, and that Churchill participated in the fraud, and received the conveyance upon some secret arrangement between the parties by which the use of the mill was to inure to the benefit of Prentiss and Reid; that no actual consideration was paid, and that Prentiss and Reid are insolvent; that the conveyance was not made in the course of business of the corporation, and is void for want of authority in said Prentiss and Reid to make the transfer; that Prentiss and Reid should be removed from the office of directors of said corporation, and the deed to Churchill canceled, and that all alienations of property made by the said directors contrary to law be set aside, and said directors account for their official misconduct, and pay to the creditors all sums of money and

the value of all property that they may have acquired to themselves or transferred to others, or that may have been lost or wasted by any violation of their duties as directors, and that the said stock, property, things in action and effects of said corporation be sequestered and a receiver appointed of the same.

In addition to the foregoing, the bill contains the statements and charges of a judgment creditor's bill, and also the appropriate prayer for such bill, including the requisite prayer for a receiver and injunction. It requires the defendants to answer under oath. The defendants appeared and filed separate demurrers to the bill.

While these demurrers were pending and undisposed of, the complainant moved on the matter of the bill, unsupported by affidavits, for the appointment of a receiver. In opposition to this motion the defendants filed the affidavits of the defendants Billings, Reid, Prentiss and Churchill.

These affidavits deny the allegations of the bill with reference to the fraudulent disposition of the corporate property, as well as the representations alleged to have been made to complainant. They do not deny the statement made in the bill that the defendant corporation is, and for a long time past has been, insolvent, but Billings says "that to the best of his knowledge the Prentiss Lumber Company has no assets, money, property, debts or choses in action, or equitable interest of value, which can be applied in the extinguishment of complainant's judgment." Reid says "that the Prentiss Lumber Company has no equitable interests, things in action or other property, exclusive of all prior just claims thereon, which complainant could not discover and reach by execution, of the value of five hundred dollars, or of any other value;" and he "denies that said corporation has now, or had when said bill was filed, any money, legal or equitable claims or demands, due it from different persons, and that it has a large amount of real estate, contracts in lands, and other interests, legal and equitable, in real estate, boats and vessels, or any interests in the property conveyed to the defendant Churchill, or that it has money and other personal

property." Prentiss "denies that said Prentiss Lumber Company has equitable interests, things in action or other property, of the value of upwards of five hundred dollars, or any value, exclusive of all prior just claims upon the same, which complainant could not discover and reach by execution on his said judgment."

None of the affidavits deny the regularity or validity of complainant's judgment or the return of the sheriff that the defendant had no goods, chattels, lands or tenements whereof he could cause to be made the residue of the damages and costs, according to the exigency of said writ.

On the hearing of the motion the court made the following order:

"The motion for the appointment of a receiver in this cause having come on to be heard, and solicitors for the respective parties having been heard thereon, now, on motion of Turnbull & Dafoe, solicitors for the complainant, it is ordered by the court that Charles B. Greely be, and he is hereby, appointed receiver of all the property, equitable interests, things in action and effects of said Prentiss Lumber Company, a corporation, one of the above-named defendants, belonging or in any way appertaining to said defendant [said corporation] at the time of the commencement of this suit, to wit: on the 2d day of February, A. D. 1884 (except such as are exempt by law under the statutes of this State, if any), and vested with all the rights and powers of a receiver in chancery, upon the filing with the register of this court a bond for the faithful performance of his duties as such in the penal sum of five thousand dollars, and the approval by this court.

And it is further ordered that said Prentiss Lumber Company and its proper officers assign, transfer and deliver over to said receiver, on oath, under direction of the court or the judge thereof, all and singular the property, real and personal, of or belonging to said corporation, said defendant and the said Prentiss Lumber Company, its officers and agents, forthwith surrender and deliver to said receiver all the assets, materials, tools, machinery, fixtures, effects and property of every description, nature and kind of or belonging to said Prentiss Lumber Company; and also all money, drafts and bills of exchange, checks or other evidence of indebtedness due and owing to said Prentiss Lumber Company,

as well as all books of account, books of record of said corporation, accounts, deeds, bonds, mortgages, certificates of stock, vouchers and papers of every nature and description belonging to said corporation, and that said receiver, or either or any of the parties to this cause, have leave to apply to the court from time to time for such further order or direction as may be necessary."

The receiver qualified and the Prentiss Lumber Company appealed.

Jurisdiction is conferred upon the court of chancery in behalf of a creditor who has obtained judgment at law, and who has been unable to collect the same upon execution, in whole or in part, to compel a discovery of any property or things in action belonging to the defendant, and of any property, money or things in action due to him or held in trust for him, and to prevent the transfer of any such property, money or things in action, or the payment or delivery thereof to the defendant, except where such trust has proceeded from some person other than the defendant. How. Stat. § 6614. The next section provides that the court shall have power to compel such discovery and to prevent such transfer, payment or delivery, and to decree satisfaction of the amount remaining due upon such judgment out of any property, money or things in action belonging to the defendant, or held in trust for him—with the exception above stated—which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution or not, except property exempt from execution.

These provisions relative to judgment creditors were originally adopted into our statutes from those of the state of New York. 2 Rev. Stat. tit. 2, pt. 3, art. 2, §§ 38, 39. The construction given to the law and practice in such cases by the courts of that state is therefore entitled to great weight. Under the practice of the court of chancery of New York state, if the equity of the bill filed by judgment creditors after the return of execution unsatisfied was not denied upon the application, it was almost a matter of course to appoint a receiver, pending the litigation, to preserve and protect

the property for the benefit of whoever should be entitled to it under the decree of the court. *Osborn v. Heyer* 2 Paige 343; *Bloodgood v. Clark* 4 Paige 574; *Fitzburgh v. Everingham* 6 Paige 29; *Bank of Monroe v. Schermerhorn* Clark Ch. 214. Under a similar statute the court of chancery in New Jersey held the same doctrine. *Fuller v. Taylor* 2 Halst. Ch. 301. The same practice prevailed in suits by judgment creditors in the English courts of chancery. *Middleton v. Dodswell* 13 Ves. 266. It is the duty of the complainant who has obtained an injunction in such suit to apply for a receiver without delay. *Osborn v. Heyer* and *Bloodgood v. Clark* supra; *Philips v. Atkinson* 2 Brown C. C. 272; *Read v. Bowers* 4 Brown C. C. 441; *Waters v. Taylor* 15 Ves. 10.

If the case is a proper one for a receiver, the denial by the defendants that the corporation has any property or effects of any kind is no bar to the exercise of the jurisdiction. If the denial in this respect ultimately proves true, the defendant is not injured and the complainant proceeds at the peril of being obliged to pay costs. This was the principle laid down in the foregoing cases in New York, and in *Fuller v. Taylor* supra.

That a judgment creditor's bill can be maintained under the foregoing provisions of the statute, there can be no doubt. A corporation is treated as a person, and the statute prescribing the rules for the construction of statutes provides that "the word 'person' may extend and be applied to bodies politic and corporate, as well as to individuals." How. Stat. § 2, subd. 12. This construction is consistent with the manifest intent of the Legislature, and has been applied in many instances to corporations as falling naturally within its scope.

It is proper to consider other provisions of the statute with reference to judgment creditors of corporations. How. Stat. ch. 281, § 3, [§ 8150] enacts that the circuit court within the proper county shall have jurisdiction over directors, managers, trustees and other officers of corporations, and over any persons who may have held such offices in any corporation, provided that proceedings are commenced within one year after

they have ceased to be such directors, managers, trustees and other officers :

*First.* To compel them to account for their official conduct in the management and disposition of the funds and property committed to their charge.

*Second.* To decree and compel payment by them to the corporation whom they represent, and to its creditors, of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others, or may have lost or wasted by any violation of their duties as such directors, managers, trustees, or other officers. * * *

*Seventh.* To set aside all alienations of property made by the trustees or other officers of any corporation contrary to the provisions of law, or for purposes foreign to the lawful business and objects of such corporations, in cases where the persons receiving such alienation knew the purpose for which the same was made.

*Eighth.* To restrain and prevent any such alienation in cases where it may be threatened or there may be good reason to apprehend that it is intended to be made.

Section 5 enacts that the jurisdiction conferred in the third section of the chapter shall be exercised as in ordinary cases on bill or petition, as the case may require or as the court may direct, at the instance (among others mentioned) of any creditor of such corporation ; and section 6 provides :

"Whenever a judgment at law, or a decree in chancery, shall be obtained against any corporation, incorporated under the laws of this State, and an execution issued thereon shall have been returned unsatisfied in part or in whole, upon the petition of the person obtaining such judgment or decree, or his representatives, the circuit court within the proper county may sequestrate the stock, property, things in action and effects of such corporation, and may appoint a receiver of the same."

These statutes are in pari materia and must be construed together. The bill in this case is framed, not only as a judgment creditor's bill in the ordinary signification of that term, but it is framed to invoke the jurisdiction conferred by chapter 281. The stock of an insolvent corporation constitutes a trust fund for the payment of its creditors. The same has sometimes been said with reference to the other

property of an insolvent corporation. Among the creditors of such corporation equality is equity. The statute recognizes this maxim and declares that the court shall, upon final decree, cause a just and fair distribution of the property of such corporation, and of the proceeds thereof, to be made among the fair and honest creditors of such corporation in proportion to their respective debts. Any creditor of the corporation is entitled to come in by bill or petition and establish his claim and share in the assets, and this he may do, although the bill is not filed in behalf of all creditors or of such as should come in and share the expense.

The statements in the bill amply sustain the jurisdiction of the court; and although the affidavits of the defendants deny all fraud and misapplication of the funds of the corporation, they fail entirely to deny the main facts which entitle the complainant to the relief afforded under that statute. They do not deny the obtaining of the judgment, and issue and return of the execution unsatisfied in part. They do not deny that the corporation is insolvent. They do not deny that it ceased to carry on its business more than four months previous to the filing of the bill; although there is a qualified denial of this fact in the affidavit of Mr. Prentiss. He says that he " denies that said company ceased *to do* business more than four months ago." But he immediately proceeds to show his meaning of such denial by saying: " but says that said company has been closing up its affairs, reducing its assets to cash and paying its creditors as rapidly as it can." He also says "that said corporation was unable to carry on the business of manufacturing lumber at its said mill during the coming season for want of available capital." So it may safely be said that the allegation that the corporation had ceased to carry on business for more than four months stands uncontradicted.

The affidavits of the defendants show affirmatively that the defendant corporation is proceeding, through its officers, to convert its assets into money as rapidly as possible, and to pay off certain of its creditors. It being insolvent, such action must result in the payment of some to the exclusion

of others. Such conduct in behalf of its officers, although
legal and proper before a bill is filed against it by a judg-
ment creditor whose execution is returned unsatisfied,
becomes improper after the filing of such bill. From that
time no unsecured creditor is entitled to a preference over
others. The object of the statute is to bring all the prop-
erty of a corporation so circumstanced within the control and
disposition of the court, to the end that it may be distributed
equally and ratably among all the honest creditors of the cor-
poration. According to the affidavits of the defendants they
have used all diligence to convert the assets and apply them
to the payment of the creditors of the .corporation, but
whether to the secured creditors or to the unsecured they do
not say ; and with such diligence and dispatch have they pro-
secuted this object that they swear that the corporation has
now no property, equitable interests or things in action re-
maining, exclusive of prior just liens thereon, which can be
applied to the payment of complainant's debt.

The defendant, however, insists that a receiver will in no
case be appointed when the issue stands on demurrer, and
*Cook v. Detroit & Milwaukee Railroad Co.* 45 Mich. 453,
is relied upon as supporting that position. The facts in that
case were different from those in the present one. The
receiver in that case was appointed ex parte while the issue
stood upon demurrer. The defendant was exercising its cor-
porate functions and conducting its business as usual. The
court below decreed on this ex parte application that the stock,
property, things in action and effects of the defendant " be and
the same hereby are sequestered," and it not only appointed a
receiver without giving the defendants an opportunity of be-
ing heard, but decreed a sequestration of the railroad com-
pany's property. Courts of equity are always averse to
appointing receivers upon an ex parte application without
notice to defendants whose rights are to be affected. It must
be an extraordinary case which would justify such appoint-
ment ex parte, and some special circumstances must be shown
to exist which would render it necessary to put a receiver in
possession of the debtor's property to prevent irreparable

loss: *Sandford v. Sinclair* 8 Paige 373; the rule being that a receiver will not be appointed before answer unless it appears that there is danger to the property or fund by the insolvency of the party having possession of it, or from some other cause; but when justice requires it, and the merits appear to demand it, upon the hearing of which due notice is given, one will be appointed. *West v. Swan* 3 Edw. Ch. 420; *Vann v. Barnett* 2 Brown C. C. 158; *Metcalfe v. Pulvertoft* 1 Ves. & B. 180.

In *Howard v. Palmer* Walk. Ch. 391, the order for a receiver was granted on a special motion of which notice was given to the defendant's solicitor, who did not appear to oppose it. The case stood upon demurrer; and the court held that the demurrer was no objection to granting the order; that if the defendant had appeared and opposed the appointment on that ground, the court would have looked into the pleadings to see whether the demurrer was well taken, and if it had any doubt on the question, would have ordered the motion to stand over until the demurrer was disposed of.

In reviewing the action of a circuit judge in appointing a receiver two things will be considered: *First,* whether the discretion vested in him has been abused; and *second,* whether a right has been impaired by such appointment.

It is not easy to prescribe limits to discretionary action. There are however certain general principles by which its exercise is governed. As a general rule, it would be safe to say that when insolvency is alleged, and not denied upon the hearing of the application, and it is made to appear that there is danger that the assets will be misappropriated or wasted, a receiver should be appointed.

In this case, as before stated, the insolvency charged is not denied, and the bill of complaint makes a strong case of misappropriation, which I think the circuit judge was warranted in regarding as not overcome by the affidavits. If the defendant could be permitted to keep on converting the assets and applying them to the payment of secured or favored creditors, it may well be that when final decree was

rendered there would be nothing to distribute among the fair and honest creditors of the corporation in proportion to their respective debts, as contemplated by the statute.

Neither do I see that any substantial right has been impaired by the appointment. Ordinarily, the control and management of the affairs of a corporation will not be taken from its authorized officers before final decree; yet circumstances may exist where it may be proper to do so, and place the property in the hands of a receiver pending the litigation. This, I think, is such a case, and warranted the court below in placing the property, if any remained, in the custody of a receiver pending litigation. If there was in fact no property left to pass to the receiver, no rights can be affected. The appointment is made for and on behalf of all parties interested, and not for the benefit of the complainant or defendant merely. It determines no rights; it merely secures the property for the benefit of those who shall appear entitled to it. The affidavits filed in opposition to the motion fail to show that the corporation is engaged in carrying on its business, but do show that it is closing up its business, and is unable to carry it on for want of available means. The order of the court was made upon notice and after full hearing, and I can see no good reason for reversal.

The order appealed from is affirmed with costs, and the record remanded for further proceedings.

The other Justices concurred.