WOOD, APPELLEE, *v.* GALPERT ET AL., APPELLANTS.

[Cite as Wood v. Galpert, 1 Ohio App. 2d 202.]

(No. 26901—Decided February 3, 1965.)

*Messrs. Parks & Eisele*, for appellee.
*Messrs. Woodle & Wachtel*, for appellants.

CORRIGAN, J. This appeal comes to us on questions of law and fact from an order of the Court of Common Pleas appointing a receiver in an action to foreclose a judgment lien filed by plaintiff, appellee herein. As such, it will be tried *de novo* in this court. There is a stipulation by the parties, filed on April 28, 1964, reading as follows:

"It is stipulated that plaintiff's motion for appointment of a receiver was submitted to, and was determined by, the trial court upon the affidavit of the plaintiff, the affidavit of the defendant, Viola Galpert, and the petition of the plaintiff.

"Plaintiff's motion will be submitted to this court upon the same documents."

Subsequent to the filing of this stipulation in the Court of Appeals there were other pleadings filed in the Court of Common Pleas, which are not before us.

It is undisputed that plaintiff is the assignee of a valid judgment lien on the lands and tenements of defendant appellant Viola Galpert; that this defendant purchased such property subject to this judgment lien; that there is a prior mortgage on such property; and that the rents arising from such property are presently being paid to this defendant.

Pursuant to filing his petition in foreclosure in the Court of Common Pleas, the plaintiff filed an application for the appointment of a receiver to collect the rents from the property on which his judgment lien exists and to hold the same for satisfaction thereof. He supports such application with two affidavits which state, *inter alia*, that plaintiff's judgment lien secures a balance of $18,052.60 plus interest; that the reasonable rental value of the property is $800 per month; that one Fred J. Wood quitclaimed the property to defendant Galpert, ostensibly for $2,000, some time after Elmer R. Wood had filed his certificate of judgment for lien; that there exists an unmatured mortgage for the principal balance of $80,800 which is a lien on such property; that the property will have to be sold subject to such

mortgage lien; that the sale price of the property so encumbered will not satisfy the plaintiff's judgment lien; and that the collection of rent is, therefore, essential to the preservation of plaintiff's security interest.

Defendant Galpert's affidavit states that she is the owner of the premises; that at the time she purchased such premises from Fred J. Wood she was aware of the existence of plaintiff's judgment lien and of the mortgage of defendant Lois M. Wood; and that in her opinion there is a substantial equity existing in such property in excess of the judgment lien.

The plaintiff sought to have a receiver appointed under authority of Section 2735.01, Revised Code, which provides in part:

"A receiver may be appointed by * * * the Court of Common Pleas * * * in the following cases:

"(A) In an action * * * by a creditor to subject property or a fund to his claim, * * * when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

"* * *

"(F) In all other cases in which receivers have been appointed by the usages of equity."

Receivership, although formerly an equitable remedy, is now exclusively statutory in Ohio. *Hoiles* v. *Watkins*, 117 Ohio St. 165. In addition, an order appointing a receiver is an order affecting a substantial right made in a special proceeding, and is a final order from which an appeal may be taken. *Forest City Investment Co.* v. *Haas*, 110 Ohio St. 188.

The plaintiff bases his claim to the rentals accruing on the subject real estate on the judgment lien which he has thereon. Section 2329.02, Revised Code, provides in part:

"Any judgment or decree rendered by any court of general jurisdiction * * * within this state *shall be a lien upon lands and tenements* of each judgment debtor within any county of this state from the time there is filed in the office of the clerk of the Court of Common Pleas of such county a certificate of such judgment, * * *." (Emphasis added.)

The decisive issue in this case is whether Section 2329.02, Revised Code, creates a lien on the rents accruing on the subject property. More specifically, what is the meaning of the word "tenements" as it is used in Section 2329.02, Revised Code?

The words, "lands, tenements, and hereditaments," are usually used to designate an owner's whole "bundle of rights" in any given piece of land. There is a comprehensive discussion of the meaning of those words in 1 Thompson on Real Property (1964 Replacement) 91, Section 22. On page 99 of this work, it is stated:

"The most comprehensive words of description applicable to real estate are 'tenements' and 'hereditaments,' as they include every species of real property, corporeal as well as incorporeal.

"Lord Coke says that 'tenementum, tenement, is a large word, to pass not only lands and other inheritances which are holden, but also offices, *rents*, commons, profits a prendre out of lands, * * *' * * *." (Emphasis added.)

However, on pages 100 and 101 of the same work are found the following statements:

"* * * In this country the word 'tenement' is applied exclusively to land, or what is usually denominated real property. * * *.

"* * * *

"* * * At present nothing is considered as a tenement which is not of a permanent nature.

"As a general rule rents falling due at a future date are deemed a part of the land, in the nature of an incorporeal *hereditament*, * * *." (Emphasis added.)

In 1 Tiffany Real Property (Third Ed.) 13, Section 10, it is stated:

" 'Tenement' is defined as anything which may be the subject of common-law tenure, or, as Blackstone says, it 'signifies everything that may be holden, provided it be of a permanent nature * * *.' The word, * * * is of a more extensive signification than land, which it includes, in addition to most of what we have referred to as incorporeal things real. * * *."

Black's Law Dictionary (4th Ed.) defines "tenement" as follows, at page 1637:

"This term, in its vulgar acceptation, is only applied to houses and other buildings, but in its *original, proper, and legal sense* it signifies everything that may be *holden*, provided it be of a permanent nature, whether it be of a substantial and sensible, or of an unsubstantial, ideal, kind. Thus, *liberum tene-*

*mentum,* frank tenement, or freehold, is applicable not only to lands and other solid objects, but also to offices, *rents,* commons, advowsons, franchises, peerages, etc. * * *." (Emphasis added in part.)

In Ballentine, Law Dictionary With Pronunciations (Second Ed.), "tenement" is defined as (page 1271):

"A word commonly used in deeds which passes not only lands and other inheritances, but also offices, *rents,* commons, and profits arising from lands, but usually it is applied exclusively to land, or what is ordinarily denominated real property. * * *.

"In its most extensive signification, the word comprehends everything which may be holden, provided it be of a permanent nature. In a more restricted sense, it is a house or building. * * *." (Emphasis added.)

From the above definitions, it is not entirely clear whether the word "tenements" includes rents accruing to land. However, such inquiry may be purely academic in view of the holding of the Supreme Court of this state in the case of *Moore* v. *Rittenhouse,* 15 Ohio St. 310. Although the facts in that case are somewhat complicated, it basically involved a situation wherein various creditors obtained judgments against the defendant in one county and levied execution upon his lands in another county. In the opinion the court says that by Section 421 of the Civil Code, in force at that time, the lands and tenements of the debtor within the county where the judgment was entered became bound for its satisfaction from the first day of the term at which judgment was rendered, and all other lands of the debtor from the time they were seized in execution.

The plaintiff in the *Moore case, supra,* filed his petition in the county wherein defendant's lands were located and alleged the existence of his judgment. In addition, he alleged that the defendant had no property subject to levy, that the land was insolvent, that the defendant was in possession of the mortgaged premises, and entitled to the rents and profits until condition broken, and that defendant had leased a part of the premises to a tenant. The plaintiff prayed that the equitable interest of the defendant be sold by order of the court, and that the proceeds, together with the rents due or to become due from the tenant, be applied in satisfaction of his judgment. In addition,

upon motion by the plaintiff, a receiver was appointed to take possession of and rent the land.

Various other judgment creditors came into the picture with their various judgment liens, and a question of priority arose.

The main, if not the sole, subject of the controversy among the several claimants was the fund arising from the subsequent renting of the premises by the receiver. Judge Scott, speaking for the court, stated in the opinion at page 317:

"* * * The right of the judgment creditors in this case to subject the rents arising from the land during the litigation, can rest only on the fact that their judgments and levies constitute specific liens upon the land, and that the premises are insufficient to satisfy these and prior incumbrances. * * *"

The Supreme Court did not question the right of a judgment creditor who had a lien on the lands and tenements of the judgment debtor to have a receiver appointed, who would accumulate the rents accruing from such lands for satisfaction of the judgment lien. Therefore, it must be inferred that rents accruing to land are in the nature of a tenement and, as such, are included in the judgment lien acquired by the plaintiff. The Supreme Court distinguished the rent due from the tenant after his tenancy had terminated and held it to be a mere debt, unconnected with the lands which the judgment liens incumbered. However, it held the fund arising from the subsequent renting of the premises by the receiver to be a proper subject for the judgment liens existing upon the lands.

Thus, the only question remaining is whether the plaintiff in the case at bar has presented sufficient evidence for this court to determine that the appointment of a receiver is justified under Section 2735.01, Revised Code.

Upon a careful consideration of all the assertions contained in the affidavits referred to *supra*, together with the allegations in plaintiff's petition, it is our determination that the appointment of a receiver is justified under that section. Plaintiff qualifies under subsection (A) as a creditor having a claim on the rents from the real estate in question.

Concerning the applicability of subsection (F) of the same statute, judgment creditors were entitled to the appointment of receivers under "the usages of equity" for almost a century in

England. See: *Anglo-Italian Bank* v. *Davis*, L. R. 9 Ch. Div. 275, and *In re Pope*, L. R. 17 Q. B. Div. 743. Similar American authority is found in *Turnbull* v. *Prentiss Lumber Co.*, 55 Mich. 387, 21 N. W. 375; *Falmouth Natl. Bank* v. *Cape Code Ship Canal Co.*, 166 Mass. 550, 44 N. E. 617; and 4 Pomeroy's Equity Jurisprudence (5 Ed.) 930, Receivers, Section 1334. It is our holding that plaintiff is entitled to the receiver under such subsection. However, before the appointment of a receiver can be made under the provisions of Section 2735.01, Revised Code, it must be shown that the necessity therefor is "ancillary to some final relief in equity between the parties, and not the sole object sought." See: *Hoiles* v. *Watkins*, 117 Ohio St. 165. The main relief sought by plaintiff in this case is to reach the tangible assets of defendants by a forced sale thereof. His claim to an interest in the reasonable value of the rents is based upon the probability that the sale of the real estate will not fully pay his claim. He cannot be required by the court to establish this as a certainty before he becomes entitled to the protection he seeks. It is, therefore, our conclusion, and we so hold, that the appointment of a receiver is ancillary to plaintiff's ultimate relief and should be granted.

For these reasons, the order of the Court of Common Pleas appointing a receiver was proper.

*Judgment for plaintiff.*

KOVACHY, P. J., and WASSERMAN, J., concur.