MARKMAN, J.
(dissenting). Because I disagree with the majority’s interpretation of the notice-tolling provision in MCL 600.5856, as well as with its interpretation of *186 MCL 600.2912b regarding a defendant’s permissible response to a plaintiffs notice of intent to sue, I respectfully dissent.
I. FACTS AND HISTORY
Plaintiff underwent surgery on August 7, 2003, for an aortic aneurysm and a heart valve replacement. Plaintiff alleges that during the surgery defendant Behrooz-Bruce Shabahang, M.D., “cut into the aortic aneurysm causing a laceration” and defendant John Charles Heiser, M.D., “improperly clamped [a] vessel causing vascular damage.” Defendants George T. Sugiyama, M.D., and M. Ashraf Mansour, M.D., “were called in to repair the vein and artery.” Plaintiff alleges that the injuries caused by the surgery have caused him to become “unable to live without supervision and assistance.”
On August 5, 2005, two days before the two-year period of limitations expired, plaintiff served defendants, including Spectrum Health Butterworth Campus (the facility where the surgery took place), West Michigan Cardiovascular Surgeons (the entity to which Shabahang and Heiser belonged), and Vascular Associates, EC. (the entity to which Sugiyama and Mansour belonged), with notices of intent to file suit. Shabahang responded to plaintiffs notice, as did Sugiyama, Mansour, and Vascular Associates, but Heiser, Spectrum Health, and West Michigan Cardiovascular did not. On January 27, 2006, 175 days after serving notice, plaintiff filed his complaint against all defendants.
The trial court granted summary disposition in favor of Sugiyama, Mansour, and Vascular Associates because plaintiffs notice did not include a standard of care for *187 Sugiyama and Mansour.[1] For that same reason, the trial court granted partial summary disposition in favor of Spectrum Health for its alleged liability based on Sugiyama’s and Mansour’s alleged malpractice.[2] The trial court, however, did not grant summary disposition in favor of Shabahang, who argued that the complaint was filed prematurely.
The Court of Appeals initially denied leave to appeal but, after remand by this Court, 477 Mich 934 (2006); 477 Mich 935 (2006), issued an opinion affirming in most respects the trial court’s decision regarding the sufficiency of plaintiffs notice. Bush v Shabahang, 278 Mich App 703; 753 NW2d 271 (2008). The Court of Appeals, however, held that the notice was defective for the direct liability claims against Spectrum Health and West Michigan Cardiovascular Surgeons, which were based on their alleged failure to properly hire and train staff. With respect to those claims, the Court remanded for dismissal without prejudice, concluding that the statute of limitations had been tolled by the defective notice and that the “applicable limitations periods remain tolled until entry of the grants of summary disposition.” Id. at 727. With respect to the timing of plaintiffs complaint, the court held that plaintiffs complaint was timely filed, although Judge FITZGERALD would have held that plaintiff was required to wait 182 days after giving notice before commencing the suit. Id. at 727-729 (FITZGERALD, EJ., concurring in part and dissenting in part).
*188 This Court consolidated these cases and initially heard oral argument on defendants’ applications for leave to appeal regarding: (1) whether the Court of Appeals’ remand for dismissal without prejudice was inconsistent with Boodt v Borgess Med Ctr, 481 Mich 558; 751 NW2d 44 (2008); and (2) whether plaintiffs complaint was filed prematurely. 482 Mich 1014 (2008). During oral arguments, a question arose regarding the 2004 amendment of the tolling statute, MCL 600.5856. Accordingly, we granted leave to hear full oral argument as follows:
(1) whether the plaintiffs defective notice of intent as to defendants West Michigan Cardiovascular Surgeons and Spectrum Health tolled the period of limitations pursuant to MCL 600.5856(c), as amended by 2004 PA 87, effective April 22, 2004; and (2) whether defendant Shabahang’s defective response to the plaintiffs notice of intent, MCL 600.2912b(7), was presumed valid such that the plaintiff was required to wait the full 182-day period before filing his medical malpractice action. [482 Mich 1105 (2008).]
II. STANDARD OF REVIEW
This Court reviews questions regarding summary disposition “de novo to determine if the moving party is entitled to judgment as a matter of law.” Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review questions of statutory interpretation de novo. Miller v Mercy Mem Hosp, 466 Mich 196, 201; 644 NW2d 730 (2002).
III. TOLLING STATUTE
A. ANALYSIS
A claim for medical malpractice must be brought within two years from the time the alleged malpractice *189 takes place.[3] Solowy v Oakwood Hosp Corp, 454 Mich 214, 219; 561 NW2d 843 (1997). A claimant, however, can toll this limitations period by complying with MCL 600.5856.[4] Specifically, § 5856(c) allows tolling during the interlude to commencing a medical malpractice action required by § 2912b if the statute of limitations would otherwise expire during that period.[5] Absent tolling, however, an action commenced after two years is “barred.” MCL 600.5838a(2). Accordingly, for plaintiffs claims to survive summary disposition, the statute of limitations must have been tolled, because plaintiff filed his complaint more than two years and five months from the date of the alleged malpractice.
MCL 600.5856(c) provides:
The statutes of limitations or repose are tolled in any of the following circumstances:
(c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days *190 remaining in the applicable notice period after the date notice is given.[6]
Previously this provision read:
The statutes of limitations or repose are tolled:
(d) If, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with section 2912b. [MCL 600.5856(d).[7]
In Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 64-66; 642 NW2d 663 (2002) (Roberts I), this Court held that in order to toll pursuant to the pre-amendment provision, plaintiffs notice must comply with MCL 600.2912b(4).[8] The.instant question is whether under the post-amendment provision, the notice must also comply with § 2912b (4). The majority holds that under *191 the amended notice-tolling provision a defective notice, i.e., one that does not satisfy § 2912b(4), will nonetheless toll the statute of limitations. I do not agree and believe instead that the notice-tolling provision still requires a notice that is compliant with § 2912b(4) in order to effectively toll.
The Court’s obligation in interpreting a statute is to “give effect to the Legislature’s intent as expressed in the words of the statute.” Pohutski v City of Allen Park, 465 Mich 675, 683; 641 NW2d 219 (2002). “[Language does not stand alone, and thus it cannot be read in a vacuum. Instead, ‘it exists and must be read in context with the entire act....”’ G C Timmis & Co v Guardian Alarm Co, 468 Mich 416, 421; 662 NW2d 710 (2003). “Statutes that address the same subject or share a common purpose are in pari materia and must be read together as a whole” to fully reveal the Legislature’s intent. People v Harper, 479 Mich 599, 621; 739 NW2d 523 (2007); see also Turnbull v Prentiss Lumber Co, 55 Mich 387, 394; 21 NW 375 (1884). The notice-tolling provision and the notice statute, § 2912b, are in pari materia because the notice-tolling provision was enacted with § 2912b, see 1993 PA 78, and directly references § 2912b. Accordingly, the notice-tolling provision must be interpreted in light of the overall statutory scheme within which it was placed.
The notice-tolling provision tolls “[a]t the time notice is given in compliance with the applicable notice period under section 2912b.” The applicable notice period *192 under § 2912b is 182 days from the filing of the notice during which a complaint may not be filed, MCL 600.2912b(l); Omelenchuk v City of Warren, 461 Mich 567, 573; 609 NW2d 177 (2000), and only begins once “the person has given the health professional or health facility written notice under this section,” MCL 600.2912b(l). Notice is only considered “written notice under this section” if it complies with § 2912b(4), which states that “notice . . . under this section shall contain a statement” regarding substantive aspects of the alleged malpractice. See Boodt, 481 Mich at 562-563 (“[A] plaintiff cannot commence an action before he or she files a notice of intent that contains all the information required under § 2912b(4).”). For the notice to be given in compliance with the “applicable notice period,” that period necessarily must exist. Because giving notice as required by § 2912b(4) constitutes the only manner by which the applicable notice period is brought into existence, it seems logical to conclude that the Legislature intended the notice-tolling provision to be triggered only by the plaintiff filing such notice.
Furthermore, allowing the notice-tolling provision to be triggered by a defective notice makes little sense considering that the provision only applies “if during [the applicable notice period] a claim would be barred by the statute of limitations.” MCL 600.5856(c). One cannot fairly say that a claim would be barred “during” the notice period when the notice period has not begun due to the plaintiffs failure to file a sufficient notice. Further, the tolling period is equal to the “number of days remaining in the applicable notice period after the date notice is given.” MCL 600.5856(c). Because a defective notice does not create an applicable notice period under § 2912b(l), the number of days remaining in that period cannot be determined. Thus, if a defective notice is allowed to toll, the notice-tolling provision *193 would provide no guidance for determining the tolling period. The only manner by which the notice-tolling provision can be given meaningful effect is to interpret it as requiring the notice specifically contemplated in § 2912b(4), which creates the applicable notice period to which the tolling provision repeatedly refers. Accordingly, contrary to the majority, I believe that a defective notice cannot toll the statute of limitations under § 5856(c).
Here, plaintiffs notice was defective because it did not contain any statement regarding the standard of care for claims alleging direct liability against West Michigan Cardiovascular and Spectrum Health. Plaintiffs failure to include any statement regarding the standard of care for Sugiyama’s and Mansour’s alleged malpractice also makes the notice defective for vicarious liability claims against Spectrum Health based upon their malpractice. Because plaintiffs notice was defective in this regard, the statute of limitations for those claims was not tolled by § 5856(c). Moreover, because the statute of limitations was not tolled, and because plaintiffs complaint was filed more than two years after the alleged malpractice, these claims are time-barred and should be dismissed with prejudice.
B. RESPONSE TO THE MAJORITY
The majority’s interpretation is at odds with its own assertion that “[t]he statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme.” Ante at 167. By focusing only on the amended language in the notice-tolling provision’s first clause, the majority disregards the implications of the remaining portion of the provision. Ante at 169-170. Such an analysis is incomplete in light of the direct correlation that the remaining portion of the *194 provision has with § 2912b and its notice period. Although the legislative amendment may only have altered parts of § 5856(c), the whole scheme nonetheless must be considered in order to determine the Legislature’s intent. The numerous references to the notice period in § 5856(c) necessarily mean that the period established by § 2912b(l) must have come into being in the first place for those references to be given any effect, and this can only take place when notice that complies with § 2912b(4) has been supplied. The majority, however, interprets the notice-tolling provision in a manner that bears no logical relationship with the statute that requires that notice be given in the first place. Thus, rather than adopting an interpretation that “works in harmony with the entire statutory scheme,” the majority instead adopts an interpretation that raises an insoluble tension between the tolling provision and the notice statute that will only be resolved by years of litigation, which perhaps is the whole point of the majority’s exercise.
This tension arises most clearly in the form of MCL 600.2301, which the majority employs to sustain its conclusion that a defective notice can toll the statute of limitations, because a court can thereby “disregard any error or defect” in the notice. MCL 600.2301 provides:
The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties. [Emphasis added.]
Without reference to any language from the tolling or notice statutes, the majority ascertains that a “good- *195 faith attempt to comply with the content requirements of § 2912b” allows tolling under § 5856(c), ante at 178, because any defect “should be disregarded or cured by amendment,” ante at 180.
As this Court explained in Boodt, 481 Mich at 563 n 4, “§ 2301 only applies to pending actions.” As discussed above, § 2912b(1) provides that a person “shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.” Section 2912b (4) states that the “notice given to a health professional or health facility under this section shall contain a statement of at least all of the following.. ..” Therefore, “a plaintiff cannot commence an action before he or she files a notice of intent that contains all the information required under § 2912b(4).” Boodt, 481 Mich at 562-563. An action is not “pending” if it cannot be “commenced,” and § 2912b(l) clearly prohibits a plaintiff from commencing an action before giving sufficient notice. I would not allow a plaintiff who is out of compliance with § 2912b, and thus not in compliance with the medical malpractice reforms enacted by our Legislature, to take advantage of the amendment provision. Accordingly, § 2301 is inapplicable, and a plaintiff cannot retroactively “amend” the notice of intent, and the courts cannot “disregard any error or defect” in the notice of intent.
Although I disagree in almost all respects with the majority’s analysis regarding the amended notice-tolling provision, I note in particular the following difficulties with this analysis:
(1) The majority states that it “cannot assume that language chosen by the Legislature is inadvertent” or *196 that a “change means nothing at all.” Ante at 169-170. Why exactly is “interpreting] the amended statute in the same manner [as] . .. the pre-amendment statute” something that this Court “cannot do”? Ante at 169. The beginning point for interpreting a statute must always be its language. Wickens v Oakwood Healthcare Sys, 465 Mich 53, 60; 631 NW2d 686 (2001). Even after an amendment, the statute must continue to control, because it constitutes the law of this state. In light of the majority’s position that any amendment must exact some change in meaning, what choice does the Legislature have if it wishes to make minor amendments to clarify a certain portion of a statute consistent with the Court’s interpretation? The majority’s position is especially dubious when the Legislature, as it did here, makes minor changes to one part of a statute at the same time that it makes major changes to another part.[9]
While in many and perhaps most instances it undoubtedly is the legislative intent, in enacting an amendment, to change existing law, there are, as undoubtedly, other instances, particularly if uncertainty exists as to the meaning of a statute, when amendments are adopted for the purpose of making plain what the legislative intent had been all *197 along from the time of the statute’s original enactment. [Detroit Edison Co v Janosz, 350 Mich 606, 614; 87 NW2d 126 (1957).]
Indeed, it seems most reasonable that the Legislature’s minimal changes to the notice-tolling provision were intended only to clarify the precise moment at which the statute of limitations would be tolled. The preamendment version, by stating that the “statutes of limitations or repose are tolled. . . [i]f, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose,” MCL 600.5856(d); clearly described the circumstances by which the statute of limitations could be tolled, but was less clear regarding at what point in time the tolling actually began. Conversely, the other tolling provisions did not suffer from this same infirmity by stating that the “statutes of limitations or repose are tolled . . . [a]t the time” a specific action occurred. See pre-amendment MCL 600.5856(a) through (c). With this amendment, the Legislature changed the notice-tolling provision so that it too now states that the tolling starts “[a]t the time” the specified action occurs. In light of the identity to the other tolling provisions created by the amendment, I believe the amendment is best interpreted as effecting the same meaning that the identical language carries. Adding the phrase “[a]t the time” clearly denotes that the tolling begins upon the occurrence of the specified act. Interpreting the amendment as such clarification does not render it “inadvertent.” Ante at 169. Instead, this recognizes that the Legislature sought to enhance the clarity of the notice-tolling provision to the level of the other provisions and did so through a minor alteration.
(2) The majority creates a new standard for determining whether a notice complies with § 2912b(4) by *198 stating: “A defendant who has enough medical expertise to opine in his or her own defense certainly has the ability to understand the nature of claims being asserted against him or her even in the presence of defects in the NOI.” Ante at 178. This new subjective standard based on the defendant’s “medical expertise” is not only divorced from the statute, but it is also inconsistent with the current standard set forth in Roberts v Mecosta Co Gen Hosp (After Remand), 470 Mich 679, 701; 684 NW2d 711 (2004) (Roberts IT): “[T]he claimant is required to . . . provide details that are responsive to the information sought by the statute and that are as particularized as is consistent with the early notice stage of the proceedings.” (Emphasis in original.) The majority thereby clumsily disposes of a standard that required a plaintiff to comply with all the statutory requirements in favor of one that requires the plaintiff to follow the law only to the extent that the court believes a defendant’s “medical expertise” can fill the gaps of the plaintiffs noncompliance, all without explaining even perfunctorily why the new standard is consistent with the law actually enacted by the Legislature, as opposed to the statute the majority wishes had been adopted.
(3) The majority’s amendment process allows a plaintiff to commence his action 182 days after giving defective notice despite the fact that § 2912b(l) disallows a plaintiff from commencing suit unless he has given “written notice under this section.” In other words, the majority has rewritten § 2912b(l) to enable a plaintiff to commence his suit 182 days after giving defective notice if it manifests the plaintiffs “good-faith attempt to comply with § 2912b(4).” Ante at 178. Cf. Roberts I, 466 Mich at 66 (holding that a “plaintiff must fulfill the preconditions of § 2912b(4) in order to maintain a medical malpractice action”). By this revision, the ma *199 jority rejects the Legislature’s intention that notice “shall contain [specific] statements]” and substitutes its own goal of allowing plaintiffs to commence their actions despite obvious omissions that completely frustrate the purpose of the legislative notice procedure.[10] The majority never explains how the tolling statute amendment compels this rewriting of the notice statute, most likely because no valid explanation exists. The majority cannot cite anything in the amendment that altered the clear language in § 2912b(l), nor can it cite anything that indicates the Legislature intended that such language be ignored.
(4) The majority questions in dictum “whether Roberts I and Boodt were correctly decided” based on its interpretation of the amended notice-tolling provision, ante at 175 n 34, even after acknowledging that those cases “relied on language of a statute that is no longer in existence,” ante at 166. The majority’s disagreement with Boodt seems to be based largely on its misunderstanding of that decision. Boodt held that a plaintiffs complaint does not toll the statute of limitations pursuant to § 5856(a) after defective notice has been given, because § 2912b(l) disallows a plaintiff from commencing an action unless the plaintiff has given “written notice under this section.” Boodt, 481 Mich at 564. The majority, however, interprets Boodt as holding that “no *200 tolling was afforded in the presence of a defect pursuant” to the notice-tolling provision, and thus “the plaintiffs action was not commenced under § 2912b(l).” Ante at 170 n 26. Thus, notice-tolling was never an issue in Boodt, yet the majority inexplicably finds that its interpretation of the notice-tolling provision throws Boodt into question. As for Roberts I, the majority never explains any possible errors in that decision other than to say that it “opined,” rather than “held,” that “the focus of § 5856(d) was on compliance with § 2912b in its entirety.” Ante at 169. The majority thus attempts to diminish the validity of Roberts I by characterizing this decision as simply an expression of one possible opinion among many, rather than actually analyzing the law in any coherent manner to demonstrate why Roberts I may be incorrect.[11] Although the majority makes clear that it disagrees with the results reached in Roberts I and Boodt, it does not deign to explain why the law does not support those results.
(5) By finding that § 2912b “is silent regarding the consequences of filing a defective NOI” and “makes no reference whatsoever to a mandatory dismissal penalty in the event of a defect,” the majority raises an irrelevant issue concerning “whether a mandatory dismissal with prejudice under § 2912b was the intent of the Legislature.” Ante at 172-173. However, this Court has never held that a defective notice alone requires “mandatory dismissal with prejudice.” By phrasing its in *201 quiry as it does, the majority obviously misapprehends the procedure by which plaintiffs claims were dismissed.
First, the majority overlooks the interplay between the statute of limitations and the notice-tolling provision. The Legislature clearly created a two-year limitations period for medical malpractice actions, and then clearly stated that an action cannot be commenced after that period has expired. It also clearly created a tolling provision that allows the limitations period to be suspended if a claimant gives notice pursuant to § 2912b. If notice is not given, then tolling is not triggered. If tolling is not triggered and the statute of limitations expires, the latter operates in the same manner that it does in every other action: it bars claims from being commenced after its expiration.
Second, even if a defective notice does not toll the statute of limitations, this Court has never held that the defect requires “mandatory dismissal with prejudice.” Ante at 173 (emphasis added).[12] In fact, current caselaw supports the exact opposite proposition, namely that a plaintiff filing a defective notice can avoid dismissal with prejudice by simply correcting the notice so that it complies with § 2912b(4) before the statute of limitations has expired. In Mayberry v Gen Orthopedics, PC, 474 Mich 1, 3; 704 NW2d 69 (2005), this Court held that “a second notice of intent to sue, sent with fewer than 182 days remaining in the limitations period, can initiate tolling under § 5856(d) as long as the first notice of intent to sue did not initiate such tolling.” Thus, under *202 these circumstances, nothing would bar a claimant from filing a second notice to take advantage of the notice-tolling provision.
Here, rather than not tolling because there were more than 182 days remaining in the limitations period, plaintiffs notice, filed within the last 182 days of the limitations period, did not toll because it was defective. Although plaintiff only had two days in which to correct the defects, had he done so within that time, the statute of limitations would have been tolled and he could have timely commenced his action after the 182-day waiting period. Thus, any time a defective notice is filed, the plaintiff always has the opportunity to revise the notice to comply with § 2912b (4), at least until the expiration of the statute of limitations, and the defect alone does not mandate dismissal with prejudice.
(6) Without regard to the fact that a provision for “mandatory dismissal with prejudice” is unnecessary in § 2912b due to the dismissal necessitated by the statute of limitations, the majority proceeds with its misguided, and fruitless, search for direction from the Legislature that a defective notice requires “mandatory dismissal with prejudice.” Unsurprisingly, the majority finds no such mandate, but rather concludes that the Legislature rejected a “mandatory dismissal” based on its interpretation of a provision of the initial notice legislation that the Legislature never adopted. Ante at 173.
Although “actions of the Legislature in considering various alternatives in language in statutory provisions before settling on the language actually enacted” may constitute a legitimate form of legislative history, In re Certified Question, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003), the majority’s use of it here exemplifies well the shortcomings inherent in such approach. To reasonably discern legislative intent from rejected language, *203 the rejected provision should be considered as a whole, rather than partially as the majority does by only looking at the first sentence of the provision. The full provision stated:
Except as otherwise provided in this subsection, in an action alleging medical malpractice, the court shall dismiss a claim not included in the notice required under section 2912f. This subsection does not apply to a claim that results from previously unknown information gathered during discovery.
As an initial matter, this seems entirely unrelated to the statute of limitations under which dismissal is granted. The Legislature’s rejection of an unrelated provision can hardly be used to alter the clear meaning of a statute. It seems far more reasonable to conclude that the Legislature rejected this provision in favor of § 2912b(3), which provides for similar treatment of the same subject matter: undiscovered claims.[13] Rather than considering this to be the Legislature’s rationale for rejecting the initial provision, the majority concludes that it “can draw no conclusion from the omission . . . other than it was not the intent of the Legislature to incorporate a mandatory dismissal penalty into § 2912b.” Ante at 174. Most other observers of this same legislative history would without much difficulty be able to draw “another conclusion,” and would almost certainly be far closer to reality than the majority. How can the majority draw an informed conclusion concerning legislative history from a provision never enacted *204 without even considering a provision that has been enacted and actually substituted for the never-enacted provision?
(7) The majority concludes that “[t]o hold that § 2912b in and of itself mandates dismissal with prejudice . . . would be inconsistent with” § 2912b’s “stated purpose of. . . ‘promoting settlementAnte at 174-175 (citation omitted). However, the majority does not explain how allowing a defective notice to substitute for the notice required by § 2912b(4) in any way “ ‘promotes] settlement.’ ” Ante at 174. The likelihood of settlement almost certainly increases with the amount of information that the parties have regarding the subject of settlement. How can the majority’s interpretation conceivably encourage settlement when it compels defendants to proceed on the basis of incomplete information?
IV WAITING PERIOD
The second major issue concerns how long a plaintiff must wait after giving notice before filing his complaint. The relevant statutory provisions state:
(1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.
(7) Within 154 days after receipt of notice under this section, the health professional or health facility against whom the claim is made shall furnish to the claimant or his or her authorized representative a written response that contains a statement of each of the following:
(a) The factual basis for the defense to the claim.
*205 (b) The standard of practice or care that the health professional or health facility claims to be applicable to the action and that the health professional or health facility complied with that standard.
(c) The manner in which it is claimed by the health professional or health facility that there was compliance with the applicable standard of practice or care.
(d) The manner in which the health professional or health facility contends that the alleged negligence of the health professional or health facility was not the proximate cause of the claimant’s alleged injury or alleged damage.
(8) If the claimant does not receive the written response required under subsection (7) within the required 154-day time period, the claimant may commence an action alleging medical malpractice upon the expiration of the 154-day period. [MCL 600.2912b.]
After receiving plaintiffs notice, Shabahang responded, but his response did not satisfy the requirements of § 2912b(7).[14] Plaintiff then commenced his action 175 days after giving notice. I agree with the majority that a plaintiff can make a tentative determination regarding the sufficiency of a defendant’s response pursuant to § 2912b(7), and I also agree with the Court of Appeals that plaintiff did not need to challenge the sufficiency of Shabahang’s response before filing his complaint pursuant to the shortened waiting period established by § 2912b(8).
A plaintiff can file his suit after 154 days if he “does not receive the written response required under subsection (7)” within 154 days after giving notice. MCL 600.2912b(8). Importantly, the response a plaintiff must receive is that “required under subsection (7),” which clearly states that the defendant “shall furnish” a *206 response “that contains” specific statements. Thus, similar to the requirements for a plaintiffs notice, § 2912b(7) places the burden on the defendant to provide a written response that includes the requisite statements. See Roberts II, 470 Mich at 686; Roberts I, 466 Mich at 66. If the defendant does not provide those specific statements, then the response cannot be said to be the one required by § 2912b(7). Plaintiff, therefore, may file his complaint after 154 days, because he did not receive the proper response.
However, to require a plaintiff to wait for a judicial determination regarding the sufficiency of defendant’s response would effectively nullify the requirements of § 2912b(7). That is, a defendant could give a response that failed to comply with § 2912b(7) and suffer no consequences, because the only possible statutory consequence, plaintiffs early filing, would be unavailable until the court determined that the defendant’s response was defective, and by that time, the 28 days between the 154-day period and the 182-day period would almost certainly have elapsed. Accordingly, plaintiff here properly filed his complaint against Shabahang based on his own determination that he never received the response required by § 2912b(7).[15]
Rather than adopting this straightforward understanding of § 2912b(8), the majority feels the need to additionally read into the law an entirely concocted and gratuitous “good faith” standard in determining whether the defendant’s response is sufficient. That is, rather than assessing the defendant’s response, and comparing it to the requirements of the statute, a plaintiff must now consider whether defendant’s re *207 sponse constituted a “good-faith attempt to comply with the content requirements of the statute ...Ante at 182. In the place of a clear rule of law, the majority interposes an obscure and vague standard by which a plaintiff, who probably desires nothing more than to know what is statutorily required of each party, must now assess the mindset of the defendant. The majority, of course, supplies no guidance for how to satisfy its new standard, which poses a particular conundrum for plaintiffs, because, if a court determines that a response was made in “good faith,” the majority holds that the trial court should allow defendant to amend his response. Ante at 182. This means that if the plaintiff relied on his own assessment that the response was defective, and filed before the 182-day period had expired, defendant’s amendment could retrospectively make the complaint untimely. Doubtlessly, however, the majority will “correct” this problem in some later decision by a new word formula that is equally disregardful of the language of the statute. By contrast, I would simply hold that a plaintiff may avail himself of the 154-day filing option if the defendant’s response does not comply with the requirements of § 2912b(7), without regard to whether the defendant has or has not made a “good faith” effort to comply with that provision.
V CONCLUSION
In summary, my concerns with the majority opinion are: (1) it ignores the great bulk of the language of the notice-tolling provision in interpreting that provision; (2) it ignores the larger statutory scheme within which the notice-tolling provision is located; (3) it creates a new “rule” whereby legislative amendments must be interpreted to alter the meaning of the amended statute even if the statute’s clear language suggests otherwise; (4) it creates a new standard for determining a notice’s *208 sufficiency that bears no relationship to the actual requirements set forth by the Legislature in § 2912b(4), in the process also giving no consideration to the standard set forth in Roberts II; (5) it gratuitously questions the validity of Roberts I and Boodt even though they interpreted a different version of the notice-tolling provision that has no bearing on the instant case; (6) it has interpreted an amendment of one statute to completely alter the meaning of another statute; (7) it allows proposed legislation that was never enacted to trump the meaning of legislation that was actually enacted; and (8) it reads words into a statute that are not there by concocting a “good faith” requirement in § 2912b(7).
I dissent and would hold that tolling can only be effected pursuant to § 5856(c) by a plaintiffs notice of intent that complies with the requirements of § 2912b(4). Accordingly, dismissal should be with prejudice with regard to West Michigan Cardiovascular and Spectrum Health, because plaintiffs notice did not toll the statute of limitations for those claims and his complaint was filed after the limitations period had expired. Further, I would hold that a plaintiff may commence an action 154 days after giving notice if the defendant’s response does not comply with the requirements of § 2912b (7), rather than introducing a new “good faith” requirement in assessing such response. Because Shabahang’s response did not comply with the requirements of § 2912b(7), plaintiff properly commenced his action 175 days after giving notice.
Corrigan and Young, JJ., concurred with Markman, J.

 Plaintiff did not appeal this decision and thus it is not before the Court.

 The court also granted summary disposition in favor of Spectrum Health on the negligence claims based on Spectrum Health’s physician’s assistants because plaintiff failed to file a conforming affidavit of merit with those claims.

 The statute of limitations for medical malpractice claims provides that a person “shall not bring or maintain an action to recover damages for injuries to persons or property unless... the action is commenced within [2 years].” MCL 600.5805(1) and (6).

 Tolling extends the time during which a claim can be brought by temporarily suspending the statute of limitations.

 MCL 600.2912b(l) states:
Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

 Generally, this is known as the notice-tolling provision.

 2004 PA 87 amended MCL 600.5856. The amendment deleted previous subsection (c).

 MCL 600.2912b(4) states:
The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
(a) The factual basis for the claim.
(b) The applicable standard of practice or care alleged by the claimant.
(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
*191 (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

 The major change made to MCL 600.5856 was the amendment to the provision that begins tolling when a complaint is filed. That provision now states that “[t]he statutes of limitation or repose are tolled . . . [a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.” MCL 600.5856(a). Previously, the statute of limitations was tolled “ [a]t the time the complaint is filed and a copy of the summons and complaint are served on the defendant.” The amendment also completely deleted previous subsection (c), which allowed tolling when the complaint was filed and “placed in the hands of an officer for immediate service.” This reflects the Legislature’s focus on returning complaint tolling to the way it previously operated, which Gladych v New Family Homes, Inc, 468 Mich 594; 664 NW2d 705 (2003), found inconsistent with the preamendment version of § 5856(a).

 The majority provides no guidance regarding how lower courts should evaluate “good faith,” beyond the dubious guidance afforded by its conclusion in this case that plaintiffs notice meets this threshold even though the majority agrees that plaintiff wholly omitted the statements required by § 2912b(4)(b) through (e) for direct liability claims against Spectrum Health and West Michigan Cardiovascular and those required by § 2912b(4)(b), (c), and (e) for vicarious liability claims against Spectrum Health. Ante at 178-180, citing 278 Mich App at 711, 716-717. The only real guidance that can be gleaned from this conclusion is that the Legislature’s words are no longer much relevant to understanding the law of this state.

 The Court’s decision in Roberts I that the pre-amendment notice-tolling provision required notice compliant with § 2912b to toll was supported by all seven justices, including three currently in the majority who now question it. See Roberts I, 466 Mich at 67; id. at 72 (Kelly, J., dissenting) (“[T]o begin the tolling of the MCL 600.5856(d) statute of limitations, a plaintiff must fully comply with the requirements of MCL 600.2912b.”).

 This Court has held that “dismissal is an appropriate remedy for noncompliance with the notice provisions.” Burton v Reed City Hosp Corp, 471 Mich 745, 753; 691 NW2d 424 (2005). Whether the dismissal is with prejudice depends on whether the plaintiff can “still comply with the applicable statute of limitations.” Id.

 MCL 600.2912b(3) provides a shortened notice period for a claim not in the initial notice only if the plaintiff “did not identify, and could not reasonably have identified a health professional or health facility to which notice must be sent” before filing the complaint against the other parties.

 Shabahang’s response clearly did not satisfy the substantive requirements of § 2912b(7), because it was completely unresponsive to those requirements. See ante at 182-183.

 A plaintiff makes such determination at his own peril. If a court later determines that the response was not defective, then the plaintiffs complaint is subject to dismissal because he did not wait the full 182 days.